[No. 17166.    Department Two.    July 8, 1922.]

BRINNON LOGGING COMPANY, *Respondent*, v. CARLSBORG MILL & TIMBER COMPANY *et al.*, *Appellants*, JOHN HERMAN, *Defendant*.[1]

TROVER AND CONVERSION (4-1)—DETENTION OF PROPERTY—EVIDENCE —SUFFICIENCY. There is sufficient evidence of a wrongful conversion of logging equipment belonging to loggers, where, upon termination of a logging contract with defendant corporation, plaintiff made a demand for a segregation of their equipment from that of the company, in reply to which the company wrote a letter agreeing that the surrender of the property should be considered as a forceable dispossession of plaintiff by defendant; it further appearing that the company made use of some of the equipment, and never made any tender of any of the property belonging to plaintiff.

SAME (28)—VALUE OF CONVERTED PROPERTY—EVIDENCE—SUFFI- CIENCY. In an action for the conversion of logging equipment, the evidence sustains findings that the value of the property was $10,000, where it appeared that there was wire cable costing $6,495 prac- tically as good as new, boom sticks of the value of $4,000 (alleged in the complaint to be worth $2,000), and minor items worth approxi- mately $2,400, with bunk house, furniture and camp supplies valued at $2,400.

Appeal from a judgment of the superior court for King county, Hall, J., entered August 11, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for conversion. Affirmed.

*Shank, Belt & Fairbrook,* for appellants.

*Preston, Thorgrimson & Turner,* for respondent.

[1]Reported in 208 Pac. 3.

HOLCOMB, J.—In this action for damages for conversion of personal property, at the close of the evidence, appellants unsuccessfully moved for a directed verdict, but the court submitted the question of conversion and the damages therefor to the jury, which brought in a verdict for respondent for $5,004.01. Thereafter appellants unsuccessfully moved for judgment n. o. v., and in the alternative for a new trial, which being denied, judgment was entered for the amount of the verdict, against appellants.

Two propositions are urged by appellants for a reversal, as follows:

(1) That there was no evidence of any conversion of the property involved, but that, on the trial, the evidence shows that appellants were at all times anxious to have respondents take possession of the property; and (2) that there is no sufficient evidence of any value of the property greater than the price ultimately paid by the appellant corporation.

This action was tried simultaneously with another action between the two corporate parties hereto, founded upon an alleged breach of contract for the logging of certain timber land belonging to the appellant corporation, and the two cases were submitted upon the same statement of facts. The cases were submitted separately, however, to the jury, and the jury brought in separate verdicts.

The material facts in this case, as relied upon by appellants, are these:

In 1916, the appellant corporation made a contract with three parties, one Sager, one Kelley, and one Corlett, for the logging of certain timber lands belonging to it. These persons organized the respondent corporation, assigned to it the contract, and remained in control of it and its operations. In carrying out the

contract, respondent placed upon the lands of the appellant corporation the various articles of personal property claimed to have been converted. In December, 1916, respondent ceased its logging operations, and from that time Sager stayed upon the premises for the sake of holding possession. On January 13, 1917, the appellant corporation addressed to the three individuals, and to the company that had been surety upon their bond, a notice by letter containing the information that the appellant corporation would, unless the addressees should resume operations prior to January 18, 1917, retake possession of the real property and of the equipment, which was the property of the appellant corporation. The notice further asked that the addressees have a representative upon the ground at that time (January 18) for the purpose of segregating the equipment and supplies which belonged to them from the equipment which belonged to the appellant corporation, in order that there might be no dispute as to such matter. Receipt of this letter was acknowledged by letter from respondent, which denied the right of appellant corporation to cancel the contract. Sager still retaining possession of the premises, in order to get him to surrender the same, the appellant corporation delivered to him respondent's Exhibit "D," which is as follows:

"February 16, 1917.
"Brinnon Logging Company, and F. H. Sager, T. A. Kelley and J. E. Corlett.

"Gentlemen:  We do hereby agree with you that the surrender up by you of the real and personal property, possession of which you obtained pursuant to our contract with you dated March 27, 1916, shall be considered so far as any of your rights under said contract are concerned as a forcible dispossession of you by us, and that no act of yours in surrendering

or giving up any of said property shall be considered in any way as a waiver of any of your rights whether under the said contract or otherwise.

"Yours truly,

"Carlsborg Mill & Timber Company

"By J. C. Erickson,

"President."

Sager thereupon left the premises, came to Seattle, and during his absence employees of the appellant corporation took possession of the real property and the equipment which belonged to the appellant corporation.

From this point there is some divergence between the testimony. Appellants claim that the only testimony as to appellant's taking possession of any personal property of respondent was that of a witness named Odegard, who was there at the time of the entrance upon the premises by appellant's agents, and who said he remained there as a representative of the appellant corporation after that. He testified that the appellant corporation did not make any use of the equipment or supplies or interfere with them, but did endeavor to take care of them and preserve them; that the picks, shovels, and a great many hooks were taken to a tool room and placed under cover, and that the supplies in the commissary were inventoried and kept under lock and key; that the cook house supplies were kept in the same way; that they did not take any of these supplies for the use of the appellant corporation. This witness also testified that he was a clerk and had no experience in logging operations, and, at the time of taking possession by appellants, was not up in the woods. It is to be inferred, therefore, that he is in no better position to testify as to what occurred than the witnesses of respondent. It was shown by respondent that, when logging operations ceased about

the middle of December, there were on hand as the personal property of respondent a number of boom sticks, a large camp outfit, groceries, dry goods, and certain logging equipment, such as wire cable, blocks, etc. All of the wire cable was used by appellants, and there is some slight evidence that they used supplies from the commissary, groceries, and cook house supplies.

That no consent was given to the taking possession of the property by appellant is shown by the answer to the letter of January 13, 1917, and by the letter of February 16, 1917, from the appellant corporation, and by the testimony of Sager. No tender of possession of any of the personal property which belonged to the respondent on the premises was made to it in any manner after the taking of possession by the appellant corporation. The inference naturally arises that appellants, claiming, as they were at that time, that respondent had breached the contract, wherefore they had a right to retake possession, and in addition claiming that respondent owed them some $15,000 for moneys advanced, might feel that the best thing for them to do was to take possession of all the personal property and equipment, go ahead with the logging operations, using all of respondent's property that it needed in connection therewith, and off-setting anything that respondents might recover against their advances of $15,000. At any rate, appellants admittedly forcibly took possession of the property, and the jury found that they wrongfully kept possession of it and used it. The contention that appellants were at all times anxious for respondent to take possession of its property, in the absence of a tender on their behalf to return the same after they had forcibly and wrongfully taken possession thereof, is not borne out by the facts and circumstances. There is ample evi-

dence of the conversion of the property, and the verdict of the jury to that effect is correct.

Appellants further contend that there was not sufficient evidence to go to the jury as to the value of the property converted.

There was evidence on behalf of respondent, by one Kelley, that there was approximately $10,000 worth of supplies and equipment, roughly estimated by him, left by respondent. In addition thereto, there was evidence that the wire cable converted by appellants cost respondent $6,495, and that it was practically as good as new. There were about four hundred boom sticks, from sixty to eighty feet in length, flattened at the ends, and with holes bored through to permit fastening them together by chains, which were testified to be worth about ten dollars each, without the chains, or a total value of $4,000, but they were alleged in the complaint to be worth $2,000. The value of the minor items belonging to the logging equipment was shown to be approximately $2,400, and also bunk house and office furniture, commissary, grocery and camp supplies valued at $2,400. These details as to values amply support the testimony of Kelley that the value of the supplies and equipment left on the premises was approximately $10,000, which did not include the boom sticks. As against these values, crediting the $4,995 paid by appellant corporation, there was an ample margin for the verdict of the jury of $5,004 as damages to respondent by reason of the conversion.

Judgment affirmed.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.